IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No.  14-cv-00339-BNB

MICHAEL O'BANION,

Plaintiff,

v.

STUDIO J CORPORATION, a/k/a Jonas Bros. Taxidermy Studio t/n,

Defendant.
_____

**ORDER**
_____

This matter arises on the defendant's **Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6)** [Doc. #10, filed 03/27/2014] (the "Motion").  The Motion is DENIED.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff.  City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief.  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

The plaintiff filed his Complaint on February 6, 2014.  The Complaint contains the following allegations:

1.  The court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).  *Complaint*, ¶ 3.

2.  The defendant provides taxidermy services to the public.  It specializes in caring for and displaying animals harvested from around the world, and it assists hunters with importing their wildlife trophies from around the world.  Id. at ¶¶ 6-7.

3.  The plaintiff is a life-long hunter and has harvested wildlife all over the world.  Id. at ¶ 8.  The plaintiff has been a client of the defendant since before 1997 because the defendant is known for properly caring for and beautifully displaying hunters' trophies.  Id. at ¶¶ 9-10.

4.  The plaintiff has entrusted the defendant to properly care for, preserve, and create displays of approximately 32 of the plaintiff's wildlife trophies.  The defendant has successfully completed taxidermy for many trophies to the plaintiff's satisfaction.  Id. at ¶¶ 11-13.

5.  One of the plaintiff's life-long dreams was to harvest a large, free-roaming male African lion.  The plaintiff made three separate trips to Zimbabwe in search of such a lion.  Each trip was complicated and expensive, and the hunts were physically and mentally taxing.  During each trip, the plaintiff spent up to 21 days hunting for a lion over a baited site.  The bait included large animals like kudu, impala, hippopotamus, and elephant.  The bait had to be paid for or personally hunted by the plaintiff, and it had to be replaced once every three days for the duration of each lion hunt.  Id. at ¶¶ 14-19.

6.  In 2006, on his third trip to Zimbabwe, and after hunting for many weeks, the plaintiff succeeded in taking a large male lion.  The lion was regarded as the largest lion taken in

Zimbabwe in 2006. The plaintiff spent well over $100,000 to harvest the lion which included costs for airfare, hotel, food, air taxi, tips, visas, gun permits, license fees, bait fees, trophy fees, guide fees, and shipping fees. Id. at ¶ 20-22.

      7. The plaintiff hired a company out of Zimbabwe to preserve, pack, and ship to the defendant the lion and other animals incidental to the three hunts. The plaintiff had also taken a hunting trip to Tanzania and hired a company to preserve, pack, and ship to the defendant trophies from this hunt. Id. at ¶¶ 23-24.

      8. The defendant confirmed that it received the trophies, sent the trophies (including the lion) to the tannery, and received the trophies back from the tannery. Id. at ¶¶ 26-27. The defendant possessed and continues to possess the plaintiff's trophies after receiving them back from the tannery, as well as all of the accompanying importation documentation for the trophies. Id. at ¶¶ 28-29.

      9. Between 2006 and 2013, the defendant completed taxidermy work on a number of the plaintiff's animals from hunts around the world, including trophies from the Tanzania and Zimbabwe hunts. The plaintiff would contact the defendant when he was ready for the defendant to begin working on a trophy, and he would describe the work he wanted the defendant to complete. At that point, the plaintiff and the defendant would discuss the cost of the work. The plaintiff paid each bill in full. Id. at ¶¶ 30-32.

      10. Except for the time the trophies were at the tannery, the defendant maintained possession of them until it completed the taxidermy. The plaintiff often waited months or years before requesting that the defendant complete taxidermy work on his trophies, which is common practice for the defendant and other taxidermy studios. The defendant understood this

relationship and never objected to maintaining possession of the trophies until it completed the work. Id. at ¶¶ 33-35.

11. The defendant has never asked the plaintiff to retake possession of any of plaintiff's trophies prior to completing the taxidermy work, even when the defendant maintained possession for many years before completing the work. Id. at ¶ 37.

12. Over many years, the plaintiff has timely paid tens of thousands of dollars to the defendant for the taxidermy of dozens of the plaintiff's trophies. The defendant does not require the plaintiff to make any kind of a payment until the taxidermy is completed. Id. at ¶¶ 38-39.

13. In approximately June 2013, the plaintiff contacted the defendant and requested that the defendant begin work on the Zimbabwe lion, a smaller lion from Tanzania, and two leopards. The defendant informed the plaintiff that it could not find the Zimbabwe lion. After several months of searching for the Zimbabwe lion, the defendant sent the plaintiff pictures of two other lions that an employee found in the warehouse to see if the plaintiff would accept either of them as a substitute for the Zimbabwe lion. The plaintiff refused to accept a different lion. Id. at ¶¶ 40-43.

14. In September 2013, the plaintiff demanded that the defendant immediately return all of the trophies still in the defendant's possession along with all of the accompanying importation documentation. The defendant failed to return the trophies. The plaintiff made another demand for immediate return of his trophies in November 2013. Id. at ¶¶ 44-45.

15. Despite multiple demands from the plaintiff, the defendant refused, and continues to refuse, to return the Zimbabwe lion, all of the other trophies in its possession, and all of the importation documentation. Id. at ¶¶ 46-48.

The plaintiff asserts four claims against the defendant: Conversion, Negligence by Bailee, Breach of Contract, and Breach of Implied Contract. The defendant seeks dismissal of the Complaint as barred by the applicable statutes of limitation in Colorado and the equitable doctrine of laches. The parties agree that Colorado law applies.

The statute of limitation for a negligence claim is two years. C.R.S. § 13-80-102(1)(a). The remaining claims have a limitation period of three years. C.R.S. § 13-80-101(1)(a) and (h). "[A] cause of action for injury to person, property, reputation, possession, relationship, or status shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." C.R.S. § 13-80-108(1). "A cause of action for breach of any express or implied contract . . . shall be considered to accrue on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence." C.R.S. § 13-80-108(6). "A cause of action for wrongful possession of personal property, goods, or chattels shall accrue at the time the wrongful possession is discovered or should have been discovered by the exercise of reasonable diligence." C.R.S. § 13-80-108(7).

The defendant argues that the plaintiff commenced this action more than seven years after he delivered the property to the defendant, but the plaintiff should have known of his claimed injuries sooner through the exercise of reasonable diligence. However, the plaintiff alleges that the defendant completed taxidermy on a number of the plaintiff's trophies between 2006 and 2013; when he was ready for the defendant to begin working on a trophy, the plaintiff would contact the defendant and describe what he wanted done; the defendant maintained possession of the trophies until the plaintiff requested the work and the defendant completed the work; the plaintiff often waited months or years before requesting that the defendant complete taxidermy on

5

his trophies; the defendant understood this relationship, which is common practice for the defendant and other taxidermy studios; the defendant never asked the plaintiff to retake possession of any of his trophies prior to completing the taxidermy work, even when it required the defendant to maintain possession of a trophy for many years before completing the work; the plaintiff did not learn that the defendant could not locate the Zimbabwe lion until 2013; the plaintiff made multiple demands for the Zimbabwe lion, the other trophies in the defendant's possession, and the importation documents in 2013; and the defendant refused to return them.

Taking those well-pleaded allegations as true and construing all reasonable inferences in favor of the plaintiff, as I must, the plaintiff has plausibly alleged that despite the exercise of reasonable diligence, he could not have discovered the bases for his causes of action until 2013. Therefore, the allegations of the Complaint do not demonstrate that the plaintiff's claims are barred by the applicable statutes of limitation. The Motion is denied insofar as it seeks dismissal of the plaintiff's claims as barred by the statute of limitation.

"The elements of laches are: (1) full knowledge of the facts; (2) unreasonable delay in the assertion of available remedy; and (3) intervening reliance by and prejudice to another." Hickerson v. Vessels, 316 P.3d 620, 623 (Colo. 2014) (internal quotations and citations omitted). "The essential element of laches is unconscionable delay in enforcing a right under the circumstances, usually involving a prejudice to the one against whom the claim is asserted." Id. (internal quotations and citations omitted).

Here, the plaintiff alleges that he did not have full knowledge of the facts until 2013, and that he immediately demanded possession of his property upon learning that the defendant could

6

not locate the Zimbabwe lion. In addition, the defendant relies on information outside the allegations of the Complaint to allege prejudice to it. Accordingly,

IT IS ORDERED that the Motion [Doc. #10] is DENIED.

Dated September 15, 2014.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge
